## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| TRUDY A. BROWN, ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | Docket No. 05-43-P-H |
| ) | |
| JO ANNE B. BARNHART, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| *Defendant* ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from anxiety, depression and a personality disorder, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from a personality disorder and an adjustment disorder with mixed features, impairments that were severe but did not meet or equal those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 2, Record at 25; that her

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on November 29, *(continued on next page)*

statements concerning her impairments and their impact on her ability to work were not entirely credible in light of her own description of her activities and lifestyle, Finding 3, *id.*; that she had a slight impairment in ability to get along with co-workers, peers and the public, a slight impairment in ability to deal appropriately with changes in a work setting, a moderate to severe impairment in calculation skills and a moderate impairment in ability to respond appropriately to normal job stresses, Finding 4, *id.*; and that based on her age (39, a "younger individual"), education (high school) and residual functional capacity, she was able to make a successful vocational adjustment to work existing in significant numbers in the national economy, Findings 7-9, *id.*; and that she therefore had not been under a disability at any time through the date of decision, Finding 10, *id*. The Appeals Council declined to review the decision, *id*. at 6-8, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

---

2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

*Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in (i) ignoring, without rationale, findings of a Disability Determination Services ("DDS") non-examining consultant, and (ii) making a credibility determination that was unsupported by the evidence and based on a selective review of her testimony, as well as relying on an opinion of a medical expert that was marred by the same flaws. *See generally* Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 8).  I find no reversible error.

## I.  Discussion

### A.  Failure To Adopt Limitations Found by DDS Consultant

As a threshold matter, the plaintiff faults the administrative law judge for according some weight to the opinions of DDS non-examining consultants but then ignoring, without rationale, the findings of one in particular (S. Hoch, Ph.D.).  *See id*. at 1-2; Record at 266-68.  Her contention is without merit.

The administrative law judge was confronted with conflicting evidence as to the severity of the plaintiff's psychological impairments.  A DDS examining consultant, Roger S. Zimmerman, Ph.D., examined the plaintiff on two separate occasions with essentially consistent findings.  *See* Record at 164-71 (Zimmerman report dated September 14, 2000), 209-12 (Zimmerman report dated February 27, 2002),.  In a nutshell, Dr. Zimmerman found the plaintiff to have poor mathematical calculation skills (possibly as a result of a learning disability), a mild adjustment disorder with mixed features, some problematic aspects in personality functioning (notably tendencies to avoid and distrust others),

3

possibly amounting to a personality disorder, and (as of the time of the second report) a mild impairment in ability to organize her day in a productive fashion. *See id*. at 169-70, 211-12.

On both occasions, Dr. Zimmerman found no evidence for an underlying thought disorder or a severe affective disorder. *See id*. at 169, 212. On both occasions, he assessed the plaintiff as capable, from a psychological perspective, of working. *See id*. at 170 (noting, in 2000 report: "Despite any impairments noted and based upon these evaluation results, the claimant appears able to engage in productive work by being able to display such job related psychological skills as understanding, memorizing and following instructions. Problem areas as regards job functioning are likely to include motivational factors as well as the claimant's ability to relate to those in a supervisory capacity."), 212 (noting, in 2002 report: "Despite any impairments noted, and based upon these evaluation results, the claimant appears able to perform a variety of basic job-related psychological skills. This includes her ability to communicate, understand, concentrate, memorize and follow instructions. Problem areas as regards job functioning are likely to include some aspects of problematic personality functioning as regards the claimant's ability to interact with others in a smooth fashion.").

Subsequent to issuance of the second Zimmerman report, two DDS non-examining consultants reviewed the Record, reaching conflicting conclusions as to the severity of the plaintiff's mental impairments. As the plaintiff points out, Dr. Hoch assessed her as moderately limited in several areas, including ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See* Statement of Errors at 1; Record at 266-68 (Hoch mental residual functional capacity ("MRFC") report dated July 17, 2002). By contrast, however, David. R. Houston, Ph.D., found her mental impairments to be non-severe, obviating the need even to complete an MRFC

4

assessment. *See* Record at 213-25 (Houston Psychiatric Review Technique Form dated March 8, 2002); 20 C.F.R. § 416.920a(4).

Finally, Charles O. Tingley, Jr., Ph.D., a consultant who was present at the plaintiff's hearing on May 15, 2003, testified that she would have mild to moderate impairment in her ability to carry out activities of daily living, moderate impairment in social functioning, mild impairment in concentration, persistence and pace and moderate to severe impairment in performing mathematical calculations. *See* Record at 67-68. He added that she would have mild difficulty relating to fellow workers, supervisors and the public and some mild adjustment problems responding appropriately to changes in the work setting. *See id.* at 70.

The administrative law judge chose to adopt, in essence, the MRFC of Dr. Tingley. *See id.* at 23. In doing so he committed no error; indeed, he was obliged to resolve such conflicts in the evidence. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

Nor is there discernible error in the administrative law judge's handling of the opinion of Dr. Hoch. The administrative law judge made quite clear that he credited the Hoch and Houston opinions in part, but only to the degree that they supported his bottom-line conclusion that the plaintiff retained sufficient capacity to work. *See* Record at 24. Despite Drs. Hoch's and Houston's differences of opinion as to the severity of the plaintiff's impairments, both reports fairly can be read to support that bottom line. *See id.* at 225 (notation by Dr. Houston that plaintiff's mental impairments non-severe), 268 (statement by Dr. Hoch that plaintiff "[m]ay do best working alone or in small groups. May have some distractibility based on emotional factors such as avoidance. May require very occasional re-direction but should tolerate normal, non-intrusive supervision.").

### B. Credibility Determination; Medical Expert Opinion

The plaintiff next attacks both the administrative law judge's credibility finding and the medical expert's MRFC assessment on the basis that (i) neither is supported by the evidence, and (ii) both are based on a selective review of her testimony. *See* Statement of Errors at 2-3. I am unpersuaded.

With respect to credibility, the administrative law judge wrote:

> The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and life style. At the hearing the claimant testified that she is able to leave her house daily despite hav[ing] panic attacks. She is able to cook, clean, and attend to her personal hygiene adequately. She takes medications that significantly improve her symptoms, as she reported to her doctor in December 2002.

Record at 23. This summary is essentially accurate. *See id.* at 50, 59-60, 317. As the plaintiff points out, *see* Statement of Errors at 2, her testimony regarding her forays out of the home was nuanced and qualified: She testified, for example, that she does not go out alone and that her panic attacks sometimes cut short her planned activities (for example, she has left a grocery store without completing her shopping), *see* Record at 50-52. Nonetheless, it is still fair to say that her testimony indicated that despite her panic attacks, she managed to leave her house daily. In short, the administrative law judge's credibility determination is buttressed by specific findings that, in turn, find support in the Record. In such circumstances, an administrative law judge's credibility determination is entitled to deference. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

With respect to Dr. Tingley's MRFC opinion, the plaintiff posits that (i) he relied heavily on her ability to care for her children, and (ii) this constituted error inasmuch as:

6

> Parenting is qualitatively different from any other human undertaking. Parenting is not analogous to work nor is it analogous to other forms of social interaction. The ability to parent does not equal the ability to function in society without marked limitations or the ability to work on an ongoing, consistent basis without decompensation. A single parent must either find a way to do these things or lose her children to state custody. An individual capable of meeting these requirements cannot, upon that basis, be said to have only mild to moderate limitations. An individual can both meet a mental health listing and care for her children.

Statement of Errors at 2-3 (footnote omitted).

As an initial matter, the plaintiff's characterization of Dr. Tingley as relying "heavily" on her child-care capacities in formulating his opinion is not a fair one. Dr. Tingley relied not only on her testimony regarding activities of daily living (some of which did not implicate child care) but also on his own questioning of the plaintiff at hearing, his observations of her demeanor and his review of the medical evidence of record, including Dr. Zimmerman's findings. *See* Record at 63-71.

In any event, the plaintiff cites no authority (either within or extrinsic to the Record), nor can I find any, supporting the proposition that a seeming capacity to perform certain daily activities must be taken with a grain of salt (by either a medical expert or an administrative law judge) because performed in an individual's role *qua* parent. Indeed, my research suggests the opposite: that the performance of child-care duties permissibly is taken into consideration in determining what capacities a claimant retains. *See, e.g., Brooks v. Barnhart*, 128 Fed. Appx. 344, 345 (5th Cir. 2005) ("The ALJ determination regarding Brooks' residual functional capacity . . . was also supported by substantial evidence. In addition to Brooks' medical records, evidence of Brooks' daily activities, including cleaning, cooking, shopping, child care, and personal care, indicated that Brooks had the adequate residual functional capacity to perform at least sedentary work."); *Schacht v. Barnhart*, No. 3:02 CV 1483 (DJS)(TPS), 2004 WL 2915310, at *11 (D. Conn. Dec. 17, 2004) ("The evidence of [plaintiff's] significant child care responsibilities, during which time she had custody of her niece while raising her own son as well despite her migraines, reasonably supports a finding that the

7

Plaintiff could work on a regular and continuing basis under the limitations set forth in the ALJ's RFC finding.").[2]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of November, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[2] I do not mean to suggest that an administrative law judge – a layperson – permissibly may rely *solely* on a plaintiff's activities of daily living to craft an RFC assessment. *See Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"). That question is not before me inasmuch as the plaintiff questions the reliance of Dr. Tingley – an expert – on child-care capabilities and, in any event, the administrative law judge in this case relied upon expert advice in making an RFC determination.